## INJURY TO BRAKEMAN FROM USE OF A DEFECTIVE CAR.

[Circuit Court of Lucas County.]

MICHIGAN CENTRAL RAILWAY CO. v. WILLIAM BUTLER.

Decided, January 13, 1902.

*Negligence—Brakeman Seizes Defective Grab Iron and Falls Beneath Car—Defect in Iron not Noticed by Car Inspector—Construction Given to Rule by Employes with Knowledge of Employer—Varying Degrees of Danger as between Customary Methods—Circumstantial and Corroborative Testimony.*

1. Where an employe went about his work in the customary manner, and did not assume a hazard that a person of ordinary prudence engaged in the same work would avoid, he can not be regarded as guilty of negligence, notwithstanding he did not adopt the safest course open to him.

2. It can not be assumed that a rule was violated, and contributory negligence predicated on such violation, where it appears from the evidence that by the general or uniform practice of employes, which practice seems to have been known to the employer, the rule was not regarded as applicable to a situation such as the one in which the accident occurred.

3. Chalk marks indicating that a car was out of repair, but which were not readily noticeable to a brakeman operating the car in the yards at night, do not amount to notice to such brakeman of the defective condition of the car; and were such not the case, the notice would not go beyond the defect which the inspector discovered when he marked the car to some other defect which he did not discover.

4. The failure of a car inspector to discover that a grab iron or hand hold was not properly fastened, indicates a failure to thoroughly inspect the car, and the operation of such a car constitutes under Section 2365-21 *prima facie negligence.*

5. Testimony to the effect that a person who has been subpoenaed as a witness was heard to make a certain statement is corroborated to a certain extent by the failure to put the person alleged to have made the statement on the stand.

PARKER, J.; HAYNES, J., and HULL, J., concur.

Heard on error.

William Butler, a yard switchman, in the employ of the Michigan Central Railroad Company, was injured on May 4,

1900, at about 10 P. M., while in the line of his duty attempting to mount a flat car for the purpose of setting a brake upon it. He fell upon the track and the wheels of a car passed over his right leg, crushing it, making necessary the amputation thereof just below the knee-joint. In the court below he recovered a judgment for $7,500.

The negligent act complained of was having a car in service with a defective grab-iron on the end thereof, which Butler claims gave way as he put his hand and part of his weight upon it in an attempt to spring upon the car.

It appears that Butler had been at work for the company at its North Toledo yards that evening, coupling and uncoupling cars that were being shifted by the yard engine to the various tracks in the yards; that just before the accident the engine had pushed two flat cars eastward upon what is called the "short repair track" of the company. That the foremost car was empty and the second car was loaded with defective car wheels. There was no eye-witness to the accident other than Butler. He testifies that as these cars came upon the short repair track he was a short distance eastward of the point where said track diverges from the other tracks, and south of said track. That he started to intercept the cars and mount them and set brakes upon them. That because of car wheels upon the ground between him and the short repair track, he was obliged to pass a short distance to the westward, and as he came to said track, the forward or east end of the forward car, which was the empty car, had passed him, so he continued westward until he came opposite to the opening between the two cars, when he stepped between them, and, placing his right hand upon the grab-iron, which was upon the west end of the east car, and his left hand upon the platform of the approaching or westward car, he attempted to spring or throw his body so as to seat himself upon the forward car, and, in so doing, he threw his weight partly upon this grab-iron, as before stated, when it gave way, with the result stated.

The evidence shows that the grab-iron, which consisted of an iron rod about three-quarters of an inch in diameter and eighteen inches long, was placed upon the end of the car to

aid trainmen in coupling and uncoupling cars, but that it was not unusual to make the use of it, which Butler attempted on this occasion, and that this manner of mounting the cars was not considered especially hazardous. That this grab-iron was securely fastened at the inner or northern end, but the outer or southern end had not been fastened except by being placed behind a certain plate bolted on the southwest corner and west end of the car—slipped or dropped between this plate and the end beam of the car—where it could not be dislodged by pulling down or pulling outward toward the west, but might be easily dislocated by lifting about five inches and then pulling an inch or so to the westward.

An inspector of cars in the service of the company testifies that at about 2 o'clock A. M. of the same day he inspected this car and found the forward journal on the south side cut, and the western end sill somewhat broken, and he then put three "Xs" upon the car, with chalk, which was the usual manner of indicating to the trainmen that the car was defective, a "cripple," and was to be set upon the repair track for repair; and he says that at that time he observed that the grab-iron was in position, though he admits that the method described of fastening the southern end was defective, and that he overlooked this defect, which we think he would have discovered if he had observed due care.

Now counsel for the company contend that the plaintiff has failed to establish that the accident happened in the way he describes it, and says that it is fairly inferable from the evidence that he attempted to mount the eastern car at the southeast corner thereof, where there was a stirrup, a hand-hold and a brake staff, affording safer and more convenient means of mounting the car, and that he slipped and fell, through no defect in the car and no fault of the company.

This conclusion is urged, first, upon the ground that that would be the most natural and ordinary way to mount the car; and, second, because, it is said, the grab-iron, if in place, could not be dislodged by the movement attempted, since that would cause a pressing down upon and not a lifting up of the grab-iron; and, third, because a close inspection of the second or

westward car failed to disclose a particle of blood upon any of the wheels, while particles of blood, though infinitesimal, were found upon the second wheel westward from the east end of the forward car, indicating that that wheel passed over the leg.

Of these in their order: First, under the circumstances related by Butler of the east end of the forward car having passed him before he came near enough to mount it, and especially in view of the fact that it was his purpose, as he says, to set the brake upon the eastern end of the westward or loaded, car, whereby he could better control both cars, it is not apparent that it would have been more natural or convenient to mount at the southeastern corner of the eastern car; and it is shown by the testimony of many witnesses upon the subject, that the difference in the two methods, in point of ease, convenience or safety, was not great; that is, the employes in this line of service discerned no great difference, and the method attempted was not unusual.

Second. While the inspector at 2 A. M. observed the grab-iron in position, and Butler testifies that at the time he took hold of it it seemed to be in position, it is evident, if credit is to be given to the account of Butler of what happened, that the end had become dislodged from its position behind the plate, though the nearly horizontal position of the iron may have been preserved. This might easily happen in the twenty hours intervening between the inspection and the accident. The evidence shows that the fastening at the north end was so tight that the horizontal position of the iron might have been maintained though the south end were not behind the plate.

Third. Butler was not removed from the track until both cars had passed beyond him. Even if three of the wheels of the front car passed over his leg, four wheels of the hind car must have done so also, so that if blood should have spurted and lodged upon any car wheel, it is difficult to see why some sign of blood could not be found upon the wheels of the hind car. But the examiners thereof found no blood on the wheels of the hind car, which certainly ran over the leg whether the accident happened as related by Butler or as conjectured by the company. In view of these facts and of the extremely insig-

nificant quantity found, which might have come from a scratch or abrasion of a hand in taking off the wheel, or a slight bleeding of the nose of some employe, or might have come from some animal (for the experts can not say that it was human blood, or how long it had been upon the wheel), or from any one of a multitude of causes not improbable, we think that this and the other circumstances mentioned are not sufficient to over-come the positive statement of Butler; at least they are not sufficient to require the jury to disregard the testimony of Butler or to authorize us to say that the verdict is contrary to the weight of the evidence. Besides, Butler's account has some corroboration in the testimony of the car inspector who says that twenty-five minutes after the accident happened he found this grab-iron hanging down, the south end having become entirely liberated from its fastening behind the plate and the north end only being attached, and one Gayes Orr, an employe, also testifies to this grab-iron hanging down soon after the accident.

It is also urged on behalf of the company that Butler was guilty of negligence in adopting the method he attempted to pursue to mount the car. I have said enough on that point to indicate our views that the jury was not required to come to that conclusion. If he went about his work in a usual and customary way and did not take a hazard that a person of ordinary care and prudence would avoid, he was not guilty of negligence even though he did not take the very safest course open to him. The jury had a right to give some consideration to the circumstances, making it impracticable for Butler to carefully consider or deliberate upon the shades of difference in point of safety between the different usual and customary methods open to him.

It is also urged on behalf of the company that Butler acted in violation of rule No. 26, governing employes, which appears upon page 97 of the record and reads as follows:

"Jumping on or off cars or engines in motion to couple or uncouple them, and all similar imprudences are forbidden. Every employe is required to exercise the utmost caution to avoid injury to himself or fellow employes, especially in coupling, switching or other movements of cars and trains."

It is not claimed that this rule is strictly applicable to the case in hand, but it is said this imprudence upon the part of Butler was similar to the imprudence which is expressly prohibited, namely, the jumping on or off cars or engines in motion, to couple or uncouple them. But it seems by the evidence that by the practice of the employes, which seems to have been known to the employer, the general or uniform practice of employes, this rule was not regarded as applicable to a situation like that which we have under consideration; hence we can not say that this rule was violated.

Counsel for the railroad company also urges that under the circumstances this was an assumed hazard or risk. I can not better state his claim and proposition than by reading it from his brief.

"We submit that the verdict and judgment was contrary to law. That even if the plaintiff was injured in the manner in which he claims to have been—the car having been by the company inspected, the defect having been found, and the car marked for the repair track to be repaired, all in the usual and customary method and manner of giving notice or warning to those who were to perform service upon it—that Butler in attempting to perform service upon it, without objection and complaint as to the method and custom of giving such notice and warning, assumed the risk and peril of the service.

"We submit that the judgment should have been in favor of the plaintiff in error, upon the ground that there was no legal negligence proven against the company; in other words, that the company having inspected this car and found it to be defective and marked it for the repair track, which was the known, customary and usual notice and warning to those who were handling it before they performed any particular service upon it to look to see if it was fit to perform service on; that attempting to perform some particular service at some particular point on the car, without making some investigation and examination to see to its condition, whether safe or not, he took upon himself and assumed the risk and peril of the service."

Section 2365-21, Revised Statutes, makes the use of the defective car *prima facie* evidence of knowledge of the defect. This *prima facie* case is not overcome in this case by proof of lack of knowledge and lack of opportunity to obtain knowledge of the defect. The car inspector had discovered a defect in this

car, and, in our judgment, by the exercise of ordinary care, he would have discovered this defect.

Did the marking of the car give Butler such notice of the defect as to put him in the position of assuming the risk incident to operating the car? As a rule the employe does not assume the risk of using defective machinery or appliances; but if he have knowledge of the defect and risk and continues to use the defective machinery and appliances without objection and without a promise by the employer to remedy the defect, he will be held to have assumed the risk. So, if his employment requires him to take charge of and operate defective machinery, etc., and he is aware, or by the exercise of reasonable diligence and prudence may be made aware that he is operating such defective machinery or appliances, he will be held to have assumed the risk. The case of *The Chicago & Northwestern Railway Co.* v. *Ward,* 61 Ill., 130, is a case of that character.

Does the case at bar fall within this class? Butler says that he was not in fact aware of this defect, or of any defect in the car. That he had not observed the three ''X's'' marked with chalk by the inspector on the end of the car, and that his attention had not been drawn thereto in any way. These marks were on the west end of the empty car, where, after night, though a bright night, and though he had his lantern in his hand, he might not have readily observed them. He could not see them until the car passed him and he had turned to go between the cars to mount the car. The fact that the car was being set in on the repair track did not necessarily indicate to Butler that it was a defective car, designed for repairs, for that track was used for the loading and unloading of car wheels and other parts of cars, as well as for repairs; and Butler testifies that he heard the yardmaster tell the conductor, shortly before the accident, to run these two cars upon this track, unload the loaded car and then load both cars with car wheels, and this testimony has some corroboration in the fact that the yardmaster, who was subpoenæd as a witness, was not put upon the witness stand to dispute it. It is also shown that the words: ''Set on short repair track for wheels'' were chalked upon this car, and that these words indicated that it was to be set in there

to be loaded with wheels; so that, under all the circumstances, we can not say that Butler was guilty of lack of ordinary care or diligence in failing to discover that this was a defective car or that he was chargeable with knowledge of that fact so that he should be held to have assumed the risk of going upon and operating the car. That it was his duty at that time and place to mount the car and set the brake is unquestionable and conceded.

But, assuming that he was bound to know what the "XXX" would convey to him, i. e., that this was a defective car, of knowledge of *what defect* would he thereby become chargeable? The only defects discovered by the car inspector, whose duty it was to detect defects, were those in a journal of one wheel and a break in the west end sill, though this grab-iron was in immediate proximity to the defect in the end sill.

We are of the opinion that if Butler was chargeable at all with constructive notice of defects in the car, because the car had been marked with "XXX", it would be of such defects only as had been discovered by the car inspector, and on account of which he had thus marked the car for repairs. That such notice would not reach beyond the information that Butler would have gained if he had gone to the inspector for information as to the reason of his putting the "XXX" on the car. To hold otherwise, might, we think, afford the railroad company a simple and yet effective, though unfair, method of nullifying Section 3365-21, Revised Statutes, for they might mark *all* cars "defective," on account of actual, suspected or possible defects, and thereby throw the risk, under the doctrine of assumption of risks, upon the employe, and wholly escape the responsibility designed to be fixed by this statute.

And, under the circumstances, we can not see that Butler was guilty of negligence in failing to discover this defect which had been overlooked by the car inspector.

The case of *New Orleans & N. E. R. Co.* v. *Clements,* 40 U. S. App., 465, is a case in many of its aspects like the one under consideration, and I read the statement of the case as given upon pages 466 and 467.

"This is an action to recover damages for personal injuries, brought by E. T. Clements against the New Orleans & Northeastern Railroad Company, a corporation created under the laws of the state of Louisiana, and tried before the circuit court and a jury, in which a verdict and judgment were rendered against the defendant for $12,500. There was a motion by the railroad company for a new trial, which was overruled, and thereupon a writ of error was sued out. The defendant in error, Clements, was an employe of plaintiff in error in its Meridian yards, in the capacity of night yard foreman. It was his duty to place cars coming into Meridian on tracks or sidings where they belonged, according to the course of business of the company. The company had certain inspectors in the yard, whose duty it was to inspect all cars as they came in, and it was Clements' duty to handle such cars after they had been inspected. He had an engine and crew under him to assist in handling these cars. On the night of October 15, 1897, a train of flat or gondola cars, loaded with gravel, consigned to Meridian, reached Meridian on the Alabama Great Southern Railroad about 9 o'clock P. M. These cars were immediately inspected by the inspectors, and about 11 P. M. Clements proceeded to place the cars on their proper track. For this purpose he had the engine coupled to the cars, and on signal by him the engine pulled the cars forward. Clements, having first cut the cars intended to be moved from other cars to which they were coupled, started forward the way the cars were moving—walking along the south side of the cars. Noticing that a brake on one of the cars—a flat car belonging to the Alabama Great Southern Railroad Company—was "set up," and that the car was jerking along impeded by the brake, he, in pursuance of his duty, climbed on front of the adjoining car in order to let the brake off. Having reached the platform of the connecting car, the cars then being slowly moving, he turned and stepped from that car forward to the end of the next car, where the brake was, at the same time reaching forward and taking hold of the brake wheel. The wheel of the brake came off, and Clements fell backward and against the end of the car from which he had just stepped, and thence to the ground, on the right side of the train—the side opposite to that from which he had climbed—and his left hand fell across the rail and was run over, and so injured that it had to be and was amputated. It transpired that the nut which belongs on the top of the brake rod was absent, and there was evidence that it had been off a day or two. This nut is for the purpose of holding the brake wheel on, and the brake wheel came off because of the absence of this nut. The action was predicated upon the alleged negli-

gence of the company in not properly inspecting the car, the plaintiff alleging that he was exercising due care. The railroad company, in defense of the action, denied the alleged negligence, and also denied that the plaintiff was in the exercise of due care, and pleaded certain rules of the company which it claimed made it the duty of Clements to inspect the brake wheel, and averred that Clements had ample time and opportunity to so inspect said brake as to have discovered said defect and thus guard himself against injury, and that plaintiff was guilty of contributory negligence.''

In the opinion by Judge Pardee, there appear quotations from a number of cases in point, but I shall confine my reading to his language in closing, at pages 473 and 474. He says:

''In the light of these decisions, we understand the law to be that, as to patent defects in machinery furnished by railroad companies for the employes to use, the railroad companies are insurers in all cases where the employe, by reason of his employment or the circumstances of the case, has no full opportunity, before using the machinery in question, to observe and note the patent defect; and the rule is the same with regard to all defects that can be discovered on proper examination and inspection.

''In the present case the defendant in error was not called upon by his duty to make any particular inspection of the cars turned over to him after the regular inspection. As to the particular defect which resulted in his injury, the proof is clear that although the defect was patent, and could and would have been readily noticed by any employe called ordinarily to use the same, the defendant was called upon to use it at night, in an emergency, and without opportunity to examine or inspect the same. It may be, as counsel for plaintiff in error argued, that he knew that the car had lately come in from another road; that after he reached the platform of the car he could, with the slightest movement of his hand, or instantaneous movement of his lantern, have discovered the condition of the brake (that is, the absence of the nut); and that upon that discovery he could have used the brake (''let it off'') in such a way that he would not have been injured. But the trouble is, he had no opportunity to examine the condition of the brake with his hand, or by any movement of the lantern. In the line of his duty, he was climbing on top of the car as it was moving, and he reached for and caught the brake to support himself preparatory to using the same; and to say, under such circum-

stances, that he should have made a preliminary inspection, is contrary to both reason and authority."

As I have said, the plaintiff recovered a verdict and judgment for $7,500. It is urged on behalf of the railroad company that this was excessive. I do not wish to discuss that, but will simply say that we have given it very careful consideration, both in connection with the tables which show what annuity this sum would purchase, he being forty years of age, and in connection with the testimony as to his condition and the probabilities of his being able to earn something in the future and also after considering the testimony as to his expenses, his pain and suffering, and the embarrassment, hindrance and mortification due to being crippled in this way, and after full consideration of all these and other matters bearing upon the question, we conclude that this amount is not so large as to indicate prejudice or passion on the part of the jury; neither is it demonstrable that, by mistake, the jury has made a wrong estimate which we should correct by requiring a remittitur. Finding no error in the record, the judgment of the court of common pleas will be affirmed.

*E. D. Potter,* for plaintiff in error.

*Cole, Whitlock & Cooper* and *Hamilton & Kirby,* for defendant in error.